IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:23-CR-00075 |
| v. | (Chief Judge Brann) |
| ELIJAH GAMON, | |
| Defendant. | |

## MEMORANDUM OPINION

JANUARY 7, 2026

I.   **BACKGROUND**

On March 23, 2023, a grand jury sitting in the Middle District of Pennsylvania returned a one-count indictment against Elijah Gamon, charging him with Possession with Intent to Distribute a Controlled Substance in violation of Title 21, United States Code § 841(a)(1).[1] Gamon eventually filed a Motion to Suppress Evidence on January 6, 2025 and an evidentiary hearing was conducted on May 13, 2025.[2] That motion was denied in a previous memorandum opinion and order.[3] Now, after being granted leave,[4] Gamon has filed a second Motion to Suppress Evidence.[5] As the Court is now in receipt of briefing on the issues, the motion is ripe for disposition. For the reasons that follow, it is denied.

---

[1] Doc. 1 (Indictment).
[2] Doc. 35 (First Mot. to Suppress).
[3] Docs. 51, 52.
[4] Doc. 81.
[5] Doc. 82 (Second Mot. to Suppress).

## II. FACTUAL BACKGROUND

### A. The Initial Chase

On December 18, 2022, Pennsylvania State Police ("PSP") Trooper Eric Dreisbach ("Dreisbach") was in an unmarked patrol vehicle equipped with an MVR camera watching traffic near mile marker 213 along Interstate 80.[6] At approximately 12:24 p.m., Dreisbach observed a Jeep Cherokee traveling westbound; he ran the "license plate through Clean NCIC, and [he] observed that the registered owner, Elijah Gamon, was DUI-suspended."[7] Dreisbach's search of the database also revealed that Gamon was the vehicle's sole registered owner and it provided him with a copy of Gamon's driver's license picture.[8] Dreisbach concluded that Gamon was "similar in appearance" to the black male in the license photograph.[9]

When Gamon's vehicle passed, Dreisbach pulled out and began a pursuit, noting that Defendant quickly "gain[ed] considerable distance" from him.[10] Dreisbach then activated his emergency lights,[11] and it eventually became apparent to Dreisbach that Gamon was fleeing when he "went down [an] off ramp and immediately blew the stop sign and went right back up the ramp to I-180."[12]

---

[6] Evidentiary Hearing Transcript, Doc. 46 at 11:3-10.
[7] *Id.* at 11:17-21. Clean NCIC is the PSP's system used to access certain information about individuals such as their vehicle registration, "records checks," and warrants. *Id.* at 12:6-8.
[8] *Id.* at 12:16-18.
[9] *Id.* at 38:21-24.
[10] *Id.* at 13:7-16.
[11] *Id.* 13:16-21.
[12] *Id.* at 13:24-14:2.

As he pursued Gamon, Dreisbach reviewed "headers" of investigations into Defendant through PSP's "mobile data terminal."[13] Through this, he discovered Gamon "had a fleeing and eluding with possession with intent to deliver from the year prior."[14]

Defendant eventually "abruptly" exited the interstate "at the last second."[15] He took the exit "at an extreme high rate of speed" and struck a large sign after he drove through an intersection "into the far shoulder" of the road.[16] When he hit the sign, Gamon "disabled or blew out his front left tire."[17]

Remarkably, the high-speed pursuit continued now along Route 220, with Gamon driving still at "70, 80 miles per hour, even without that front left tire."[18] He recklessly weaved in and out of traffic and "almost hit numerous vehicles head on."[19] Gamon eventually ran through an intersection, in the process "almost" striking a pedestrian, and proceeded down a side road.[20] He lost control of his vehicle and struck a tree head-on after briefly being airborne.[21]

---

[13] *Id.* at 14:20-24, 15:8-9.
[14] *Id.* at 15:12-13.
[15] *Id.* at 16:1-3.
[16] *Id.* at 16:22-25.
[17] *Id.* at 17:1-5.
[18] *Id.* at 17:10-14.
[19] *Id.*
[20] *Id.* at 18:7-12.
[21] *Id.*

### B. The Aftermath of the Crash

Dreisbach exited his "patrol vehicle with [his] firearm drawn" and then "approached his vehicle from the driver's side [and] tried to give [Defendant] commands."[22] "It was very smokey inside; the airbags went off. It was hard to see."[23] Given the severity of the accident, Dreisbach attempted to open the locked driver's side and passenger side doors.[24] He then began "trying to smash the driver's side window out" with his Asp baton.[25]

"[A]t this point, [he was] in now life-saving measures."[26] Upon managing to open the driver's side door, Dreisbach removed Gamon from the vehicle.[27] "He was semi-unconscious, mumbling, not really saying anything."[28] Dreisbach also feared the vehicle would catch fire as it was smoking.[29]

Dreisbach "put [Gamon] on his back on the ground" and handcuffed him.[30] A bystander, off-duty paramedic approached the scene and "started assisting [Dreisbach] with treating" Gamon.[31] The paramedic "asked [Dreisbach] if [he] had a blanket or anything to keep [Gamon] warm."[32] Dreisbach then "tried to find

---

[22] *Id.* at 18:17-21.
[23] *Id.* at 18:20-21.
[24] *Id.* at 18:22-24.
[25] *Id.* at 18:25-19:1.
[26] *Id.* at 19:9.
[27] *Id.* at 19:9-13.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 19:14-15.
[31] *Id.* at 19:14-18.
[32] *Id.* at 20:2-3.

something to cover him with" and eventually "popped the rear hatch area and located . . . a black jacket that [he] brough out and put on him or laid on him."[33] Gamon was eventually arrested and his car impounded.[34]

### C. The Searches

The next day, December 19, 2022, a search warrant was sought and obtained for the car that Gamon was driving.[35] Part of what was found as a result of that search was a green Apple iPhone and a bag containing white powder that was later determined to be a mixture of heroin and fentanyl.[36] On January 31, 2023, a search warrant was sought and obtained for the digital contents of the iPhone.[37] This included a "an examination and extraction of the mobile communication device" to find "all user generated data stored on the handset, SIM car and/or MicroSD card."[38]

In the affidavit of probable cause attached to the search warrant, the investigating officer, PSP Trooper Jeremy Hoy, started by attesting to the allegations regarding the car chase.[39] He then recounted some of Gamon's criminal history and mentioned that there were substances found to be fentanyl and heroin in the car at the time that the phone was seized.[40] He also included a summary of the ways those

---

[33] *Id.* at 20:5-8.
[34] *See id.* at 65:14-15
[35] *Id.* at 65:9-21; Doc. 84, at 2.
[36] Doc. 82, Ex. A, at 5 (Search Warrant for the Phone); Doc. 84, at 2.
[37] Doc. 82, Ex. A, at 2.
[38] *Id.*
[39] *Id.* at 4.
[40] *Id.*

5

involved in the distribution and sale of controlled substances utilize cell phones: including mentioning their ability to take pictures and videos of "their product," to communicate between customer and supplier, and to maintain records.[41] He finally closed in conclusory fashion stating "[b]ased upon my training experience and knowledge of this investigation, I believe GAMON used his cellular mobile phone, specifically the cellular telephone/communication device seized on December 18, 2022 to arrange, execute, monitor, and complete the intrastate transportation of Controlled Substances, and to arrange and complete the delivery of those Controlled Substances to his customers."[42]

### III.  ANALYSIS

In the motion before the Court, Gamon raises two potential issues with the search warrant for the iPhone: (1) that the affidavit supporting the search warrant does not establish probable cause and (2) that the search warrant for the phone is overbroad.[43] Each issue will be addressed in turn.

#### A.  Sufficiency of Probable Cause

The Fourth Amendment provides that, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."[44] Therefore, a search warrant is required to demonstrate probable cause "that contraband or evidence of the crime

---

[41] *Id.* at 3.
[42] *Id.* at 5.
[43] Doc. 83.
[44] U.S. CONST. amend. IV.

will be found in a particular place."[45] Because Gamon challenges the facial sufficiency of probable cause in the warrant to search the iPhone, my job "is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'"[46] In doing so, I must pay deference to the fact that "[i]t is distinctly the magistrate's task to make the 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[47] Thus, "[i]f a substantial basis exists to support the magistrate's probable cause finding, [I] must uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'"[48]

Here, there are several facts contained in the affidavit accompanying the search warrant that support a finding of probable cause: (1) Gamon was driving a car that fled the police, (2) a mixture of fentanyl and heroin was found in the car, and (3) a cell phone was also found in the car.[49] While the Defendant is correct in noting that there were no facts in the warrant application "connecting the phone to

---

[45] *Illinois v. Gates*, 462 U.S. 213, 238 (1983).
[46] *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates*, 462 U.S. at 238).
[47] *United States v. Williams*, 974 F.3d 320, 350-51 (3d Cir. 2020) (quoting *Gates*, 462 U.S. at 238).
[48] *Stearn*, 597 F.3d at 554 (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (1993)).
[49] Doc. 82, Ex. A, at 4-5.

[his] alleged drug trafficking," no direct evidence is required.[50] Rather, "a magistrate may issue a search warrant even without direct evidence. Probable cause can be, and often is, inferred from 'the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide [evidence].'"[51] The narcotics nature of the instant offense, the contents of the phone sought, and the inferences inherent in the procession of drug distributors all support the magistrate's finding that probable cause existed. The facts alleged in the complaint further support this proposition. A substantial basis for concluding that probable cause existed, and that evidence of the crime was to be found on Gamon's phone. Therefore, I must uphold the finding of probable cause and deny the motion to suppress made on this basis.

### B.   Overbreadth of the Search Warrant

Pursuant to the Fourth Amendment's prohibition on "unreasonable searches and seizures,"[52] police must generally obtain a warrant before conducting a search.[53] A valid search warrant must (1) be based on probable cause; (2) be supported by a sworn affidavit; (3) describe particularly the place of the search; and (4) describe particularly the persons or things to be seized.[54]

---

[50] Doc. 83, at 5.
[51] *Stearn*, 597 F.3d at 554 (quoting *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993)).
[52] U.S. CONST. amend. IV.
[53] *See, e.g.*, *Maryland v. Dyson*, 527 U.S. 465, 466 (1999).
[54] *See, e.g.*, *Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

"The purpose of the Fourth Amendment's particularity requirement is to prevent general exploratory searches."[55] A warrant will offend the particularity requirement "when it amounts to a 'general warrant' or one that is unconstitutionally overbroad."[56] A general warrant "vest[s] the executing officer with unbridled discretion to conduct an exploratory rummaging ... in search of criminal evidence."[57] Meanwhile, an overbroad warrant will allow for "the seizure of items as to which there is no probable cause"[58] because it describes what is seized "in both specific and inclusive generic terms."[59]

In the case at bar, Gamon argues that the search of his iPhone was effectuated pursuant to an unconstitutional, general warrant.[60] This argument fails. For a warrant to be invalidated as general, "it must vest the executing officers with unbridled discretion to conduct an exploratory rummaging through [defendant's] papers in search of criminal evidence."[61] That is not the case here. This warrant "confined the officers' discretion by limiting their search to a specific place ([Gamon's] iPhone) and limiting their search to specific categories of evidence (images, text messages,

---

[55] *United States v. Dewald*, 361 F. Supp. 3d 413, 416 (M.D. Pa. 2019) (citing *Maryland v. Garrison,* 480 U.S. 79, 84 (1987)).
[56] *Id.*
[57] *United States v. Leveto,* 540 F.3d 200, 211 (3d Cir. 2008).
[58] *U.S. v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($ 92, 422.57)*, 307 F.3d 137, 149 (3d Cir. 2002).
[59] *United States v. Christine*, 687 F.2d 749, 753-54 (3d Cir. 1982).
[60] *See* Doc. 82 ¶ 14.
[61] *United States v. Dewald*, 361 F. Supp. 3d 413, 418 (M.D. Pa. 2019) (quoting *United States v. Christine,* 687 F.2d 749, 753 (3d Cir. 1982)) (internal quotation marks omitted).

social media data, [etc.])."[62] Further, the rest of the application "enhanced the specificity of the warrant" because it identified the specific statutory offense alleged to have been committed (a violation of Pennsylvania's Controlled Substance, Drug Device, and Cosmetic Act).[63] "Courts have not suppressed evidence obtained pursuant to warrants that identify specific devices, enumerate specific crimes, and categorically delineate the type of evidence police are authorized to seize."[64]

The warrant at issue here did not authorize officers to engage in an exploratory rummaging; rather, they were only authorized to search for evidence related to the drug crimes set forth in the warrant and accompanying application.[65] The warrant includes broad language but does not amount to a blank grant to search the contents of the phone for "all data" contained within it as Gamon alleges.[66] Therefore, the

---

[62] *Id.*

[63] *Id.*; Doc. 82, Ex. A, at 5.

[64] *Dewald*, 361 F. Supp. 3d 413 at 418; *see also United States v. Yusuf*, 461 F.3d 374, 393 (3d Cir. 2006) (explaining that particularity clause was not violated where warrants authorized search for evidence of certain enumerated crimes, the search was limited in time, and the search was limited in by subject matter); *United States v. Karrer*, 460 F. App'x 157, 161 (3d Cir. 2012) (explaining that a warrant to seize images of child pornography obtained pursuant to images discovered during initial search for evidence involving unlawful contact with a minor was not a general warrant where it "identified particular devices and file types to be searched for evidence of a specific statutory offense."); *United States v. Atwell*, 289 F.Supp.2d 629, 635 (W.D. Pa. 2003) (citing *Christine*, 687 F.2d at 760) ("The use of generic classifications in a warrant is [sufficient] to delineate the categories of items to be seized when, due to the circumstances of the investigation, a more precise description is not feasible."); *United States v. Hawkins*, No. 1:11cr61, 2014 WL 7335638, at *5-6 (W.D. Pa. Dec. 19, 2014) (warrant limited search to defendant's apartment and computer devices used therein, the warrant identified the statutory violation for which evidence was sought, and "the nature of the contraband believed to be possessed in violation of that statute was identified in specific detail in the accompanying affidavit").

[65] *See Dewald*, 361 F. Supp. 3d 413 at 418-19.

[66] *See* Doc. 83, at 6.

search warrant was not a general warrant and does not offend the particularity requirement of the Fourth Amendment.[67]

## IV. CONCLUSION

For the foregoing reasons, Gamon's second motion to suppress is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[67] *See Dewald*, 361 F. Supp. 3d 413 at 419.